# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

# CHARLESTON DIVISION

HAROLD THOMAS ROGERS, et al.,

    Plaintiffs,

v.                                                                                               CIVIL ACTION NO. 2:25-cv-00182

WEST VIRGINIA UNIVERSITY
BOARD OF GOVERNORS, et al.,

    Defendants.

## ORDER

This matter is before the Court on the *Motion for Protective Order* filed by Defendant, the West Virginia University Board of Governors ("Defendant") on November 5, 2025. (ECF No. 72). Plaintiffs Harold Rogers, Miranda Lacy, National Federation of the Blind, and National Federation of the Blind of West Virginia (collectively, "Plaintiffs") filed a timely response in opposition on November 19, 2025. (ECF No. 88). Defendant filed a timely reply on November 26, 2025. (ECF No. 96). Accordingly, the motion is now ripe for adjudication. Having considered the record, the parties' submissions, and the applicable law, Defendant's motion is **GRANTED IN PART** and **DENIED IN PART** for the reasons stated herein.

## I.  BACKGROUND

The background of this matter is set forth in this Court's numerous prior rulings. As the presiding District Judge previously noted, two of the Plaintiffs—Mr. Rogers and Ms. Lacy—are visually-impaired graduate students enrolled in the Master of Social Work

online program at West Virginia University ("WVU").[1] (ECF No. 1 at ¶¶ 1, 3, 5). Mr. Rogers and Ms. Lacy each rely on assistive technology, including screen readers and screen magnification software, to access course materials and complete their academic work. *Id.* ¶¶ 5–9.

Plaintiffs bring this action under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and § 504 of the Rehabilitation Act, 29 U.S.C. § 794, against Defendant for allegedly failing to provide reasonable accommodations and equal access to programs and services. (ECF No. 54). Plaintiffs allege that Mr. Rogers and Ms. Lacy sought accommodations through WVU's Office of Student Accommodations, including accessible digital materials, auxiliary aids, and extended time on exams. *Id.* ¶¶ 33–34. Plaintiffs further claim that Defendant denied Mr. Rogers and Ms. Lacy an education comparable to that of sighted students. Specifically, Plaintiffs allege that Defendant repeatedly provided Mr. Rogers and Ms. Lacy with (1) inaccessible textbooks, (2) electronic documents that were not accessible to people using assistive technologies such as screen readers, and (3) course materials incompatible with their assistive technology; further, Plaintiffs allege that the Defendant failed to remediate inaccessible online platforms. Id. ¶¶ 37–42, 48–53, 76–80. Plaintiffs further allege discriminatory treatment during required field placements, including denial of assistive technology, baseless accusations of academic misconduct, and inadequate planning to ensure accessibility. *Id.* ¶¶ 84–99, 109–117. Plaintiffs claim that Defendant's practices violate Title II of the ADA

---

[1] The remaining two Plaintiffs—National Federation of the Blind ("NFB"), and National Federation of the Blind of West Virginia ("NFBWV")—are nonprofit organizations that advocate for the rights of blind individuals. (ECF No. 1 at ¶¶ 19–21, 23–24). As part of their missions, NFB and NFBWV actively "pursue[] litigation . . . and work[] with institutions of higher education . . . to ensure that the blind receive equal access to higher education." *Id.* ¶ 21; *see also id.* ¶ 24. Mr. Rogers and Ms. Lacy are members of both NFB and NFBWV. *Id.* ¶¶ 22, 25.

and Section 504 of the Rehabilitation Act. *Id*. ¶¶ 136–69. They seek declaratory and injunctive relief requiring WVU to provide timely and accessible educational materials and field placements; Plaintiffs also seek compensatory damages. *Id*. ¶ 170.

The presiding U.S. District Judge entered the operative *Scheduling Order* on June 10, 2025. (ECF No. 28). Pursuant to the case schedule, the deadline to serve written discovery is January 19, 2026, and the parties' deposition deadline/close of discovery is March 4, 2026. *Id*. On October 3, 2025, Plaintiffs filed their Rule 30(b)(6) notice which forms the subject of Defendant's motion (hereinafter the "*Notice*"). (ECF No. 52). Plaintiffs' *Notice* requires Defendant to designate a representative to testify as to twenty-seven areas of examination ("topics"). *Id*. Defendant seeks a protective order quashing five of the listed topics: Number ("No.") 2, 3, 14, 15, and 24. (*See* ECF No. 72). Defendant contends that these five topics in Plaintiff's Rule 30(b)(6) deposition notice are "overly broad, seek irrelevant information, and impose a heavy burden on Defendant." *Id*. at 2 n.1. Defendant also argues that these topics lack reasonable particularity as required by Rule 30(b)(6) of the Federal Rules of Civil Procedure. *See id*.

## II.   LEGAL STANDARD

### A.   Protective Order

The scope of discovery is broad pursuant to Rule 26(b)(1) of the Federal Rules of Civil Procedure, permitting "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). However, "[s]imply because information is discoverable under Rule 26 . . . does not mean that discovery must be had." *Scott Hutchison Enters., Inc.*, 3:15-cv-13415, 2016 WL 5219633, at *2 (S.D. W. Va. Sept. 20, 2016) (citing *Nicholas v. Wyndham Int'l, Inc.*, 373 F.3d 537, 543 (4th Cir. 2004)). Notwithstanding the broad scope of discovery, Rule

26(c) provides, in pertinent part, that the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c). Additionally, Rule 26(b)(2)(C) provides that the Court "*must* limit the frequency or extent of discovery" if it determines that (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1). Fed. R. Civ. P. 26(b)(2)(C) (emphasis added). Finally, to insure that discovery is sufficient, yet reasonable, district courts have "substantial latitude to fashion protective orders." *Scott Hutchison Enters., Inc.*, 2016 WL 5219633, at *2 (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)). *See also Fonner v. Fairfax Cty.*, 415 F.3d 325, 331 (4th Cir. 2005) (explaining that the decision to enter a protective order is committed to the sound discretion of the trial court).

    B.    <u>Rule 30(b)(6)</u>

Rule 30(b)(6) of the Federal Rules of Civil Procedure addresses deposition discovery directed to an organization. It provides that a deposition notice "must describe with reasonable particularity the matters for examination," and the "named organization must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify." Fed. R. Civ. P. 30(b)(6). Then, the organization must prepare the designated person so that he can "testify about information known or reasonably available to the organization." *Id*.

**III**.   **DISCUSSION**

Defendant seeks a protective order barring Plaintiffs from proceeding with a Rule 30(b)(6) deposition as to topics 2, 3, 14, 15, and 24 in Plaintiffs' *Notice*.

A.   Topics 2 and 3

Topic 2 seeks testimony regarding "[a]ll communications between [Plaintiff] Miranda Lacy and WVU regarding inaccessible educational technology and materials[,]" and Topic 3 similarly seeks testimony regarding "[a]ll communications between [Plaintiff] Harold Rogers and WVU regarding inaccessible educational technology and materials." (ECF No. 52 at 4). Defendant argues that "[i]t is facially unreasonable to seek Rule 30(b)(6) testimony regarding all communications between Plaintiffs and the University regarding Ms. Lacy's and Mr. Rogers' alleged accessibility concerns." (ECF No. 72 at 5). In support, Defendant represents that "thousands" of pages of email communications "potentially concern Plaintiffs' alleged accessibility barriers," in addition to "verbal discussions that may have occurred between Plaintiffs and various University personnel since their enrollment in 2022 and 2023." *Id.* at 6. Defendant argues that "such open-ended and overly broad topics . . . are facially overbroad and lack reasonable particularity." *Id.*

Here, Defendant points broadly to the large number of email communications that have been produced in discovery, and asserts that these two topics "would . . . require a designee to testify about nearly *every written and verbal* communication relating to Plaintiffs' accessibility concerns at the University, with numerous individuals since 2022." *Id.* at 7. However, Defendant's broad reading appears to largely overstate the scope of these topics; as opposed to every communication relating to Plaintiffs' concerns, Plaintiffs limit the communications solely to those *between the Plaintiffs and WVU*.

5

Defendant's reference to the number of emails produced in discovery is not necessarily probative of the number emails in which Mr. Rogers and Ms. Lacy are senders or recipients. Tellingly, Defendant does not represent that this subset of emails—the emails in which Mr. Rogers and Ms. Lacy are senders or recipients—numbers in the thousands. In fact, it appears that Defendant has not even assessed this question. *See generally id*. For instance, Defendant represents in its motion that "in Defendant's first ESI production alone, the phrase 'Blackboard' appears in approximately 249 documents[.]" *Id*. at 7. This representation fails to meaningfully inform the Court of the true burden imposed on Defendant, because—without more—it is completely unclear whether *any* of the 249 documents referenced were sent to or from Mr. Rogers or Ms. Lacy, or were merely communications internal to WVU.

Simply put, Defendant's vague, general assertions of undue burden fall far short of its burden in resisting discovery. It is well-established that the burden is upon the party resisting discovery, not on the party propounding discovery, to demonstrate *specifically* why the discovery should not be had. *See Slampak v. Nationwide Ins. Co. of Am.*, 5:18-CV-154, 2019 WL 4418806, at *7 (N.D. W. Va. Sept. 16, 2019) (explaining that a party objecting on the basis that a request is overly broad, burdensome, or seeks irrelevant information must "show specifically why responding to the request would create a burden or how the request is overly broad in relation to the claims and defenses presented in the litigation"). Thus, the party moving for a protective order must set forth a specific reason for the protective order, and it bears the burden of establishing good cause. *See, e.g.*, *Citynet, LLC v. Frontier W. Va., Inc.*, 2:14-cv-15947, 2022 WL 2335332, at *4 (S.D.W. Va. June 28, 2022) ("The party moving for a protective order bears the burden of establishing good cause."); *United Property & Casualty Ins. v. Couture*, 2:19-cv-01856, 2021 WL

6

5141292, at *2 (D.S.C. Nov. 4, 2021); *Minter* v. *Wells Fargo Bank, N.A.*, 258 F.R.D. 118, 124-125 (D. Md. 2009). Good cause cannot be established merely by relying upon general statements; rather, the moving party "must provide particular and specific facts to meet the high burden of proving that a protective order should issue." *Citynet*, 2022 WL 2335332, at *4. The undersigned **FINDS** that Defendant has not met that burden—particularly where, as here, the discovery sought—communications *from* Mr. Rogers and/or Ms. Lacy to WVU expressing accessibility issues, and communications *to* Mr. Rogers and/or Ms. Lacy from WVU in response—go directly to the heart of this litigation. As Defendant acknowledges in its reply brief, Plaintiff's claim under Title II of the ADA must demonstrate that Defendant "had knowledge of [Plaintiffs'] federally protected rights" but made "the conscious choice to do nothing . . . or deliberately cho[se] not to provide a reasonable accommodation." (ECF No. 96 at 7). Topics 2 and 3 seek fundamentally discoverable information regarding, as Defendant characterizes, "*what* Defendant knew and *when* it knew of alleged accessibility issues"—and its response in turn. *Id.* at 4-5. In this context, Defendant's failure to cite to a search for electronically-stored information for Mr. Rogers and Ms. Lacy among the email addressees and recipients in support of its overbreadth/burdensomeness argument is puzzling at best. Without more, Defendant has failed to demonstrate that topics 2 and 3 impose an undue burden.

Defendant stands on firmer ground, however, with respect to its argument that topics 2 and 3 lack reasonable specificity as required by Rule 30(b)(6) of the Federal Rules of Civil Procedure, as evidenced by Plaintiffs' confusing response brief. (*See* ECF No. 88 at 5). Plaintiffs represent that Defendant's arguments about topics 2 and 3 "evince a fundamental misunderstanding of Plaintiffs' narrowed language," and that "[a]fter

7

meeting and conferring, Plaintiffs removed their request for a Rule 30(b)(6) designee to testify about 'communications[.]'" *Id.* at 5. Plaintiffs assert that they now "seek testimony on the exact accessibility concerns they described with particularity in the Complaint." *Id.* Certainly, Plaintiffs are entitled to question Defendant regarding "the information known or reasonably available related to the digital accessibility issues, limited to the categories of inaccessible materials and technology identified in the Complaint[.]" *Id.* However, Plaintiffs' notice, as written, does not say that. As defense counsel explained in a November 19, 2025 email to Plaintiff's counsel, "the proposed revised language and [Plaintiffs'] explanation of what these topics seek do not match." (ECF No. 88-1 at 3).

Accordingly, the undersigned **SUSTAINS IN PART** Defendant's objection to topics 2 and 3. However, Defendant's request that it "be relieved of any obligation to provide a Rule 30(b)(6) deponent on topics 2 and 3," (*see* ECF No. 72 at 8), is **DENIED**. The parties are hereby **ORDERED** to meet and confer—either in person, or via telephone/videoconference—and attempt in good faith to reach a resolution in accordance with the second and third sentences of defense counsel's November 19, 2025 email.[2] (ECF No. 88-1 at 3). The parties are hereby **FURTHER ORDERED** to file a Joint Status Report by no later than **4:00 p.m. EST** on **December 29, 2025**, advising the Court of the status of the parties' discovery conference. The Joint Status Report shall

---

[2] The pertinent portions referenced herein state as follows:

> With respect to Topics 2 and 3, I think we understand what you are seeking. If it's WVU's knowledge of [Plaintiff] Harold [Rogers] and [Plaintiff] Miranda [Lacy]'s alleged accessibility issues with certain identified technologies . . . as alleged in the complaint, we need that to be spelled out with painstaking specificity as required under Rule 30(b)(6). If you can identify those issues alleged in the complaint for which you seek testimony on and revise your proposed language for these topics to match your explanation of what you intend for them to encompass, then we can confer with our client.

(ECF No. 88-1 at 3).

contain a certification by counsel for both parties that they have consulted—either in person, or by telephone/teleconference—in good faith and made sincere efforts to narrow the areas of disagreement to the greatest possible extent.

    B.    <u>Topics 14 and 15</u>

Topic 14 seeks testimony regarding "[w]hether WVU has conducted any testing of its existing student-used technology, particularly Blackboard, Yuzu, Harmonize, VoiceThread, Handshake, and Tevera, to learn whether it is accessible and, if so, the results and dates of such testing." (ECF No. 52 at 5). Similarly, Topic 15 seeks testimony regarding "[c]hanges WVU has made, if any, to its student-used technology based on accessibility complaints or concerns." *Id*. Defendant asserts that "[t]hese topics are overly broad," lack reasonable particularity as required by Rule 30(b)(6), and are not proportional to the needs of the case in accordance with Rule 26(b)(1). (ECF No. 72 at 8).

In support of its argument, Defendant points out that the topics are "not limited to the specific technologies or digital accessibility issues alleged in this litigation" and, further, are not limited geographically "across the University's numerous campuses and schools[.]" *Id*. Defendant represents that "WVU maintains three separate campuses across the state" and that "[t]he Morgantown campus alone houses 13 different colleges and schools and offers over 300 majors[.]" *Id*. at 9. Defendant argues that "[t]he enormous burden, expense, and time of preparing a designee to offer testimony regarding all educational technologies utilized across the entire University within the past five years far outweighs any benefit in this case." *Id*. at 10. Accordingly, Defendant seeks a protective order "limiting these topics to technologies that Plaintiffs have personally encountered in the course of their academic participation and are alleged to be at issue in this litigation— i.e., Blackboard, Harmonize, Tevera, VoiceThread, Handshake, and Yuzu." *Id*.

In response, Plaintiffs argue that Defendant's proposed limitation "is unduly narrow" and improperly impedes Plaintiffs' relevant discovery on a key issue of Plaintiffs' claim under Title II of the ADA. (ECF No. 88 at 8). Specifically, Plaintiffs argue that topics 14 and 15 are "relevant to" the issue of whether Defendant has "take[n] appropriate steps to ensure that communications with . . . participants . . . with disabilities are as effective as communications with others" and "furnish[ed] appropriate auxiliary aids and services where necessary to afford an individual with a disability an equal opportunity to participate in, and enjoy the benefits of, [its] service, program, or activity." *Id.* (citing *Paulone v. City of Frederick*, 787 F. Supp. 2d 360, 372 (D. Md. 2011); 28 C.F.R. § 35.160(a)-(b)).

Unquestionably, these topics are relevant to Plaintiffs' ADA claim. However, relevance is not the end of the inquiry. Plaintiffs have not satisfied the Court that the extensive scope of these topics—which extends "such auxiliary aids and services across the range of [WVU's] student-used educational technologies since 2020" (*see* ECF No. 88 at 8)—is proportional to the needs of the case, "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Rather, Plaintiffs largely sidestepped the issue of proportionality.

As the Court explained *supra*, "[s]imply because information is discoverable under Rule 26 . . . does not mean that discovery must be had." *Scott Hutchison Enters., Inc.*, 2016 WL 5219633, at *2. Regardless of relevance, "all permissible discovery must be measured against the yardstick of proportionality." *Victor Stanley, Inc. v. Creative Pipe,*

*Inc.*, 269 F.R.D. 497, 523 (D. Md. 2010) (citing *Procter & Gamble Co. v. Haugen*, 427 F.3d 727, 739 n.8 (10th Cir. 2005)). The undersigned **FINDS** that, as Defendant characterizes, "[e]vidence about any accessibility testing or changes to 'any' technology— across unrelated technologies, programs, and time periods" (*see* ECF No. 96 at 7)—far outpaces the scope of the deliberate-indifference issue raised in Plaintiffs' ADA claim. Thus, the scope of topics 14 and 15 do require some reasonable limitations. However, Plaintiffs are correct that Defendant's proposed limitation "is unduly narrow[.]" (ECF No. 88 at 8). Plaintiffs should not be artificially restricted to only those technologies utilized by Plaintiffs when—as Plaintiffs explain—it is necessary "to understand the university's practices[.]" (*See* ECF No. 88 at 9).

Accordingly, the undersigned **SUSTAINS IN PART** Defendant's objection to topics 14 and 15. **IT IS ORDERED** that topics 14 and 15 shall be limited to Defendant's student-used educational technologies utilized in the course of the online Master of Social Work program between August of 2022 and August of 2025.

C.  Topic 24

Lastly, topic 24 seeks testimony regarding "[a]ny evaluation WVU has taken to determine if providing any specific modifications to its policies to ensure that blind students have equal access would fundamentally alter a service or program or would result in undue financial or administrative burden." (ECF No. 52 at 5). Defendant asks that the Court "grant a protective order quashing topic 24 in its entirety." (ECF No. 96 at 10). In support, Defendant essentially argues that Plaintiffs "are attempting to flip discovery on its head" by inquiring into an affirmative defense prior to the close of discovery. (ECF No. 72 at 10). Defendant further argues that "this information could be more effectively obtained through written discovery . . . [and] Defendant has agreed to

11

supplement its discovery responses, as necessary, once the scope of Plaintiffs' claims become known." *Id.* at 11. Defendant argues that "[t]he burden and expense of providing such testimony at this stage, particularly when the same information could be obtained through less intrusive means, outweighs any potential benefit." *Id.* at 12. In turn, Plaintiffs argue that Defendant "cannot avoid providing the information Plaintiffs seek . . . about its fundamental alteration and/or undue burden defense by constantly telling Plaintiffs to seek the information in a different format or at a different time." (ECF No. 88 at 12).

Defendant concedes that it objected to Plaintiffs' written discovery requests on the same issue "on the basis that they were premature, contention interrogatories."[3] (*See* ECF No. 72 at 11 n.5). First, it is well-established that "[c]ontention interrogatories are permitted under the Federal Rules of Civil Procedure." *Leonetti v. SWN Prod. Co. & Equinor USA Onshore Props., Inc.*, 5:22-cv-35, 2023 WL 8654407, at *8 (N.D. W. Va. Apr. 26, 2023) (citing *Pauley*, 2019 WL 3226996, at *1). As this Court recently explained:

> Contention interrogatories are expressly permitted by Fed. R. Civ. P. 33(a)(2) and are considered useful to help pin down an opponent's legal theories in a case as well as the primary facts supporting them."
>
> Nevertheless, most courts agree that "[d]ue to the nature of contention interrogatories, they are more appropriately used after a substantial amount of discovery has been conducted—typically at the end of the discovery period." *Capacchione v. Charlotte–Mecklenburg Board of Education*, 182 F.R.D. 486, 489 (W.D.N.C. 1998). Premature contention interrogatories are discouraged for several reasons. First, there is "the unfairness of requiring a party to prematurely articulate theories which have not yet been fully developed." *Cornell Research Found., Inc. v. Hewlett Packard Co.*, 223 F.R.D. 55, 66 (N.D.N.Y. 2003). In addition, "a lawyer's unwillingness to commit to a position without an adequately developed record will likely lead to vague, ambiguous responses," which are effectively useless. *Taggert*, 2007 WL 152101, at *8 (citing *In re Convergent*

---

[3] "Contention interrogatories have been defined as interrogatories that request a litigant to state what it contends; to state whether it makes a specified contention; to state all facts upon which it bases a contention; to take a position, and explain or defend that position . . . or to state the legal or theoretical basis for a contention." *Pauley v. CNE Poured Walls, Inc.*, 3:18-cv-015108, 2019 WL 3226996, at *1 (S.D. W. Va. July 17, 2019).

>  *Technologies Sec. Litig.*, 108 F.R.D. 328, 338 (N.D. Cal. 1985)). Moreover, in cases where the parties anticipate the production of "an expert report which will touch on the very contentions at issue, the Court should normally delay contention discovery until after the expert reports have been served, which may then render moot any further contention discovery." *BB & T Corp. v. United States*, 233 F.R.D. 447, 450–51 (M.D.N.C. 2006) (citing *United Situations v. Duke Energy Corp.*, 208 F.R.D. 553, 558 (M.D.N.C. 2002)).

*Pauley*, 2019 WL 3226996, at *1.

Courts have acknowledged that a 30(b)(6) deposition is not necessarily "the best method for obtaining the information regarding an affirmative defense," and that "contention interrogatories are a better vehicle." *Muslow v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 19-cv-11793, 2021 WL 12324129, at *4 (E.D. La. Oct. 8, 2021). Nevertheless, courts have permitted litigants to inquire into the factual basis for such affirmative defenses during a 30(b)(6) deposition, simply cautioning that the defendant may object to any particular questions that invade the attorney-client privilege or work product protection. *See id.* (finding that 30(b)(6) topic seeking information regarding defendant's affirmative defense was "not per se improper").

Here, the undersigned notes that the parties' deadline to complete discovery is March 4, 2026, and the deadline for the Defendant's expert disclosure is February 2, 2026. The parties have engaged in a substantial amount of discovery, and—as Plaintiffs argue—discovery would not be "turned on its head" by pinning Defendant down on its position because Defendant has already been made aware of the modifications Plaintiffs seek as well as the specific policies at issue in topic 24. (ECF No. 88 at 12). Further, topic 24 inquires about the steps Defendant *has taken* already to assess viability of policy modifications for blind students. Thus, Plaintiffs seek factual information that is available currently to the Defendant. Simply put, the undersigned **FINDS** that this area of inquiry

seeks the discovery of facts and the source of information about the Defendant's defenses which are clearly relevant and discoverable within the meaning of Rule 26(b). Nor has Defendant pointed to any Fourth-Circuit authority justifying a denial of Plaintiffs' choice of discovery methods under Rule 30(b)(6). Finally, Defendant's argument that this topic lacks reasonable specificity is overstated. Plaintiffs are entitled to inquire about Defendant's undue-burden defense during its deposition. Accordingly, Defendant's objection to topic 24 is **OVERRULED**.

IV.   **CONCLUSION**

In light of the foregoing, **IT IS ORDERED** that Defendant's *Motion for Protective Order* (ECF No. 72) is **GRANTED IN PART** and **DENIED IN PART**, as set forth hereinabove.

**IT IS SO ORDERED**.

The Clerk of Court is **DIRECTED** to transmit a copy of this Order to counsel of record and any unrepresented party.

ENTERED:   December 8, 2025

Dwane L. Tinsley
United States Magistrate Judge